The Opinion or the Court was as follows:— Greenup and Keene claim under that clause of the land law which allows a pre-emption of 1000 acres to all those who, before the year 1778, had marked out or chosen for themselves any waste or unappropriated lands, and built any house or hut, or made other improvements thereon (a). Kenton and Frazier claim under the clause which allows to those generally styled villagers a settlement of 400 acres, and a pre-emption of 1000 acres adjoining thereto, to which no other person had the right of pre-emption at the time they were granted by the commissioners ⅞ therefore the claim of Green-up and Keene is of superior dignity, and for this reason, as well as because they were complainants in the court below, the legal foundation of their claim ought to be first investigated.
The certificate obtained by William Ballard, their assignor, only specifies that a pre-emption was granted to him for marking out the same in the year 1774, so that on the face thereof it is certainly deficient; nor is the deficiency supplied by any testimony in the cause, that he did build any house or hut, or make any other im *15 provement on it, and his certificate is of a later date than that of Kenton’s, therefore it does not appear that when Kenton obtained his certificate (which specifies what was requisite in his case) Ballard had any right of pre-emption to the land : and therefore, in this point of view, Frazier, who claims under Kenton, must prevail against Greenup and Keene, who claim under Ballard.
But it is urged that Greenup purchased and procured a pre-emptionwarrant on Ballard’s certificate, which was specially located, August 12th, 1786, and that by an act of the May session 1782, it ought, at least, to have the efficacy of a common treasury warrant; which this court conceives cannot be doubted.
This makes it necessary further to examine the claim of Kenton. It appears that a grant had issued on Kenton’s settlement prior to the location of the warrant procured by Greenup ; so far, therefore, Kenton’s claim-must prevail.*
And it further appears that Frazier, as assignee of Kenton, had procured his pre-emption warrant, located it with the surveyor, and made a survey thereon more than three years before Greenup located •his warrant. But Frazier did not obtain a grant on this survey until after Greenup had located, his warrant. Frazier made his location May 23rd, 1780, as1 follows : <£ Joseph Frazier, assignee, enters a pre-emption warrant of 1000 acres on the south fork ofElkhorn, joining -Preston’s survey on the south, including a cabin built by John M’Cracken and one by Joseph Lindsey, and to extend west for quantity.” And from facts agreed on by the parties, it appears that Preston’s survey is truly represented on the connected plat, and was well known at the time Frazier made his entry ; and that M’Cracken’s cabin and the two improvements in the settlement, were well known at the times Kenton entered his settlement, *16 Fierier, assignee of JTetrtor, entered liis- pre-emptf and are truly represented by the connected plau A»d then the only remaining question- which -need be made, is, has Frazier surveyed his pre-emption agreea*' fele to its entry i The survey, tsIcing the entry separately r ⅛ conformity to the decision in the case Miller's heirs vs. Fox's heirs (a), should have been made in a square, adjoining Preston to thé southward, and so as just to include M*Cracken*s cabin within the eastwai dly boundary, and extending west for quantity; which would have left a vacancy about 100 poles wide between: the settlement and a survey thus made, iki* it is urged that this could not have been Frazier’s intention, and Could not rationally have been so taken by other locators; because it is very doubtful whether, at the time this entry- was made, hé was authorised by law to locate hisl pre-emption warrant in any other way than to adjoin the settlement to which it was appendant; and ii he had doné SO, it would certainly have lost the dignity of a pre-emption ; thereforérit ought not to be presumed that hé intended to do what might have been so injurious to his interest, unless it appeared by the unequivocal calls of Ms entry that he meant to abandon his privilege as a pre-émptioner, and risk thé total loss of his warrant; and, therefore, that the entries of the settlement and preemption should be taken together, or be made to explain each other.
It appears from the entry of the settlement with the surveyor, that it has been properly surveyed, or nearly so, lfeaving a considerable part of Preston’s southern boundary to be occupied by the pre-emption, agreeably'to the first and most important call of its entry ; and although this entry would have been more explicit, had it also called to adjoin the settlement, yet this court cannot resisfe Ae force of the argument to prove that the entry ought to b,e so construed, when all the circumstances of the case are taken into consideration ; more especially as the survey, on a more rigid construction, would bind on Preston’s survey only a very small distance. To which may fee added, that if circumstances equally strong had ap-Seared in the case Miller's heirs vs. Fox's heirs, it isbe-eved it would not have been decreed that the north lio» of Miller’s claim should be restrained only just to ⅛-éltide the spring and improvement called fdr in his location. — --^Decree affirmed.

(a) Chan.Rev. of Va. laws, 91-2 — acts of 1796-7, 79, 1 Brad. 296, 397.

 The fame point Teems in effedi to have been determined in the cafe of Lillard's adm'rs. vs. Taylor's heirs, fpring term* 1803, Pr. Dec. 245. The court however in that cafe appear, from the wording of their opinion, to have placed a reliance upon Lillard’s furvey j which, if they really intended, their deciiionis at variance with the decifion of the fupreme court of the United States, in the cafe of Wilfon vs. Mafon, 1 Cranch 45. The deciiion in the cafe of Wilfon vs. Mafon has been recognifed and approved by this court in fe-vera! inftances, particularly in the cafe of Patterfon's devifees vs. Bradford, poft. But if in the caíé of Lillard's adm'rs. vs. Taylor's heirs the eXpref-üon furvey was inadvertently ufed inftead of patent, (fer the exhibits fliow that the land was patented at the time alluded to) the.decifion is retoncikable with *ífrer cafes, and is in uhifon with the cafe above mentioned*

A) Hughes 52